OPINION OF THE COURT
Alice Schlesinger, J.
Plaintiff Chris Caesar commenced this podiatric malpractice action without the help of any attorney on March 30, 2015 against defendant Dr. Frederick R. Brookman. Defendant moved to dismiss the complaint pursuant to CPLR 3211 (a) (5) as barred by the statute of limitations. As set forth below, defendant’s motion is denied, as the court finds that the doctrine of continuous treatment applies to these circumstances, effectively extending the requisite time to commence the action.
Background Facts
On September 28, 2012, plaintiff presented to defendant’s office with complaints of a possible foreign body in the bottom of his right heel. Defendant examined plaintiff’s foot and noted a two-millimeter opening in the bottom of his right heel, in which a small shard of glass had become embedded. Defendant cleansed the area with alcohol, removed the shard, flushed the area with a saline solution, applied antiseptic solution, and dressed the wound. He instructed plaintiff to apply an antibiotic cream and change the dressing every day. (Affirmation of defendant’s counsel at 2-3; see also affirmation of defendant, exhibit A.)
On September 30, 2012, plaintiff sent defendant an email (as well as a photograph of his right foot) detailing symptoms he had been experiencing since his office visit on September 28, 2012:
“Dr. Brookman,
“Either the white (square) area is from the bandage, or it is dead skin (that will have to be cut away since I dont [sic] think it reattaches)?
“Temp Wed/Thu, 99. Fri AM, 98.6. Fri PM 99. Sat *745 all day 100. Sun all day 101. I got sick Fri PM. Dont [sic] think it is foot related since my throat feels funny. My joints ached terribly and my hands got more numb (not sure that was possible). I WAS VERY WEAK (enough of a change to ask myself what was going on?). I slept 4 and 4 hrs straight (I usually urinate after 2 hrs). Could do little else.
“Had to sleep with a blanket last night (chills. Room is 70). Today I am warm.
“Couldn’t eat much. I am sick but don’t know why (not important). Could not walk because I favored right side and my right hip (outside part) hurt in bed. Right foot hurts less on outside edge, but lots more at heal (I know; it’s more of a wound now).
“I cancelled Fluzone shot for tomorrow morning. Doesnt [sic] it always work out this way? My youngest birthday is tomorrow and I hate to have the attention taken away from her (I hope I am not contagious. I think I will have to ask her not to come over?).
“Have not taken Keflex (or Augmentin). Thank you for the shout out. Havent [sic] thrown up yet and I took one Advil (fatty liver re Tylenol). Got to go back to bed. I apologize if I said TOO much. Chris.”[1]
Defendant responded to plaintiff’s email later that same day (Sept. 30, 2012), stating:
“The white square if [sic] from the bandage. You can leave it uncovered if you do not walk on it while it is uncovered. I cannot imagine that the fever and chills are from the wound as the wound looks good from the pictures. I would though take the antibiotics just in case. Let me know how you feel tomorrow. Frederick R. Brookman, D.P.M.”[2]
On October 2, 2012, plaintiff was admitted to the New York University hospital emergency room where he underwent surgery to treat a MRSA infection developed in his right heel. (See id.; see also letter from plaintiff, Feb. 17, 2016 at 5.) As a result of the surgery, plaintiff “had muscles that atrophied, . . . gained weight, . . . reached ‘severe’ levels of coronary plaque [he] had nothing like in 2010 (and [is] now on heart medication),” and “had to go to the wound care facility every *746 other week for months.”[3] Plaintiff further alleges that defendant “never consulted [him] to keep the wound bandaged,” which lead to the MRSA infection, and did not use gloves when removing the glass from his right heel.[4]
Plaintiff commenced this action on March 30, 2015, alleging that defendant departed from acceptable standards of podiatric care in connection with the treatment of plaintiffs foot, leading to an infection and surgical correction.
Defendant argues that plaintiffs complaint should be dismissed as barred by the statute of limitations pursuant to CPLR 3211 (a) (5). Defendant contends that “Plaintiffs treatment with Dr. Brookman began and ended on September 28, 2012,” and that “[accordingly, Plaintiffs claims against Dr. Brookman accrued (and thus the limitations period commenced running) on September 28, 2012, and expired two years and six months later, on March 28, 2015, two days prior to the filing of Plaintiffs Complaint.” (See defendant’s affirmation at 5.)
In response, plaintiff argues, still without the aid of an attorney, that the course of treatment that includes the alleged malpractice continued past September 28, 2012 and through September 30, 2012, due to the aforementioned emails relating to the original treatment of his foot. Thus, plaintiff asserts that the statute of limitations did not begin to run until that date; as such, his commencement of this case on March 30, 2015 (the last day to bring this action) was timely. (See letter from plaintiff, Feb. 17, 2016.)
In reply, defendant argues that the emails “do not implicate the continuous-treatment doctrine, and do not toll the limitations period, because these communications, by themselves, do not constitute continuous treatment [because] Dr. Brookman is not answering questions—or providing any actual treatment— related to Mr. Caesar’s initial presentation to his office.” (Letter from defendant, Feb. 23, 2016 at 1.)
Discussion
The only issue before this court is whether plaintiff filed his complaint before the statute of limitations had run. In *747 determining whether plaintiff’s action was timely filed, the court must consider whether the emails exchanged between plaintiff and defendant on September 30, 2012 triggered the continuous treatment doctrine to extend the statutory period by two days and render the commencement timely.
The court finds that the emails do constitute continuous treatment and, accordingly, that plaintiff timely filed his complaint.
CPLR 214-a provides in pertinent part:
“An action for medical, dental or podiatric malpractice must be commenced within two years and six months of the act, omission or failure complained of or last treatment where there is continuous treatment for the same illness, injury or condition which gave rise to the said act, omission or failure . . . .”
Continuous treatment refers to “treatment for the same or related illnesses or injuries, continuing after the alleged acts of malpractice, not mere continuity of a general physician-patient relationship.” (Borgia v City of New York, 12 NY2d 151, 157 [1962].) Continuous treatment is satisfied “where the physician and patient reasonably intend the patient’s uninterrupted reliance upon the physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress.” (Richardson v Orentreich, 64 NY2d 896, 899 [1985].)
The “act, omission or failure” complained of herein is negligent treatment of plaintiff’s foot injury. (CPLR 214-a.) Here, plaintiff presented to defendant’s office for treatment of a wound on his right heel on September 28, 2012. Two days later, on September 30, 2012, plaintiff emailed defendant with a photo of his foot and an update on the progression of his symptoms. Defendant responded that same day providing medical advice to plaintiff.
The nature of the emails shows that plaintiff considered defendant to be his doctor treating his foot injury even after his September 28 visit. Defendant’s September 30 email to plaintiff further evidences such a relationship, specifically defendant’s advice to “take the antibiotics just in case” the fever and chills are from the wound, and his request that plaintiff, “Let me know how you feel tomorrow.” (Emails attached to Dec. 28, 2015 letter from defendant.)
Those emails constitute “continuous treatment for the same illness, injury or condition” (namely, the wound on his right *748 heel), and treatment of “which gave rise to the said act, omission or failure.” (CPLR 214-a.) As demonstrated by defendant’s September 30, 2012 response in which he provided plaintiff with medical advice pertaining to the healing of his right heel wound, “the physician and patient reasonably intend [ed] the patient’s uninterrupted reliance upon the physician’s observation, directions, concern, and responsibility for overseeing the patient’s progress.” (Richardson, 64 NY2d at 899.)
Defendant relies on Nykorchuck v Henriques (78 NY2d 255 [1991]) for his contention that the emails did not constitute a continuous treatment within the meaning of the statute. Nykorchuck, however, merely provides the general proposition, which this court must accept, that “[i]n the absence of continuing efforts by a doctor to treat a particular condition, none of the policy reasons underlying the continuous treatment doctrine justify the patient’s delay in bringing suit.” (Id. at 259.) In Nykorchuck, the Court of Appeals found, inter alia, that the plaintiff, who brought an action for failure to diagnose and monitor breast cancer, received treatment from the defendant doctor during the period at issue with respect only to a separate medical condition (infertility related to endometriosis), and not a breast condition.
Here, however, defendant made continuing efforts to treat plaintiff for the particular condition at issue: namely, problems related to his right heel. In other words, the September 30, 2012 email, in which defendant advised plaintiff to “take the antibiotics just in case,” was a “continuing effort[ ] by [Dr. Brookman] to treat [plaintiff’s] particular [right heel] condition.” (Emails attached to Dec. 28, 2015 letter from defendant; Nykorchuck, 78 NY2d at 259.)
Further, defendant’s reliance on Petito v Roberts (113 AD3d 743 [2d Dept 2014]), for the proposition that the continuous treatment doctrine is inapplicable in the absence of a scheduled future visit for the same or a related condition, is misplaced. In Petito, the defendant doctor last treated the plaintiff on May 17, 2005, when he referred the plaintiff to a urologist. The Court found that the plaintiff did not obtain an actual course of treatment from the defendant following May 17, 2005, and therefore that the statutory period expired on November 17, 2007. Thus, the action, commenced on March 14, 2008, was untimely.
However, Petito provides merely that the “failure to establish a course of treatment cannot itself constitute a ‘course of treat *749 menf for the purpose of tolling the statute,” and that a regularly scheduled appointment for the near future, agreed upon during a final visit, can constitute continuous treatment. (113 AD3d at 744-745.) But Petito does not go so far as to find that the absence of a scheduled in-person visit precludes application of the doctrine. What is significant in the case at bar is that plaintiff in the present matter continued to seek, and received, an actual course of treatment from defendant, albeit by post-visit email communication.[5]
Therefore, since plaintiff sought further treatment from defendant related to his original right heel condition—and defendant provided treatment in the form of advice—in the emails between the parties on September 30, 2012, the statute of limitations did not begin to run until September 30, 2012, at the earliest. As such, plaintiffs complaint was timely filed on March 30, 2015, on the last day before the statute of limitations had run.
Accordingly, defendant’s motion to dismiss is denied.

. Emails attached to Dec. 28, 2015 letter from defendant.

. Id.

. See emails attached to Dec. 28, 2015 letter from defendant (emphasis omitted).

. See letter from plaintiff, Feb. 17, 2016 at 5.

. Further, Petito, a Second Department decision, is not binding upon this court. In any event, defendant’s remaining cases are factually distinguishable from the present matter.